# In the United States Court of Federal Claims

Nos. 23-1112, 23-1115, 23-1125, 23-1132, & 23-1139
Filed: August 16, 2023
Re-issued: August 29, 2023[1]

---

|  |  |
|---|---|
| SYNEREN TECHNOLOGIES CORPORATION, et al., | ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) |
| *Defendant*, | ) ) |
| and | ) ) |
| RIVA SOLUTIONS, INC., et al., | ) ) |
| *Defendant-Intervenors*. | ) ) |

---

## ORDER

Plaintiff Ekagra Partners has filed applications for admission to the Protective Order on behalf of three consultants.  ECF Nos. 58-60.  The United States and Defendant-Intervenor BrightPoint, LLC oppose these applications.  ECF Nos. 65, 66.

When deciding whether to grant opposed applications for admission to a bid protest protective order, "the court will consider such factors as the nature and sensitivity of the information at issue, the party's need for access to the information in order to effectively represent its position, the overall number of applications received, and any other concerns that may affect the risk of inadvertent disclosure."  RCFC App. C ¶ 18(c).  The use of "other" in this list makes clear that first three considerations are "concerns that may affect the risk of inadvertent disclosure" and the last a catchall provision for similar risks of inadvertent disclosure.

First, no party disputes the proprietary nature of the contents of the administrative record.  Indeed, Ekagra moved for a protective order arguing that "[t]he Complaint and the administrative

---

[1] The Court initially filed this Order under seal to allow the Parties to propose redactions.  No redactions were proposed, so the Court releases the Order in full.

record in this protest contains or will contain proprietary and confidential pricing information, source selection information, sensitive plans or specifications, and other competition-sensitive procurement information." Case No. 23-1125 ECF No. 6 at 1. That said, the Court is *very* familiar with the administrative record in this protest. In fact, the first 29,888 pages of this 33,118-page record were before this Court in *Allicent Technology, LLC v. United States*, 166 Fed. Cl. 77 (2023). A review of the newly added documents in the current record shows that they are similar in nature to the ones in *Allicent*. In other words, the record in this case is typical of a bid protest. Yes, it is protected procurement information. But no more so than the typical bid protest that comes before the Court. Thus, the Court considers this factor to be neutral.

Second, Ekagra argues that it "seeks to admit Messrs. Bragg, Schnell, and Chapin to assist in its review of the administrative record." ECF No. 82 at 4. This, according to Ekagra, is necessary to allow it "to effectively represent its position" under RCFC App. C ¶ 18(c). Given that this procurement is for IT support, the record is, necessarily, technical in nature. The Government and BrightPoint, however, do not agree that the technicality of this record necessitates experts. They argue that the Court should deny access to the consultants because no experts were necessary to understand the *Allicent* record, which is largely identical to this record. The Court agrees. The current record is not materially more technical than *Allicent's* record, yet no experts were necessary there. And the need here is even more attenuated because the Agency has made clear that Ekagra's arguments about the re-evaluation of its proposal do not change anything in the award decision. In the re-evaluation, the Agency concluded that:

> The significant weaknesses found by COFC to be rationally assigned (PWS areas 3.3.1, 3.3.3, 3.3.4, 3.4.8, and 3.6.1), by themselves, represent an unacceptable risk of unsuccessful contract performance. . . . The significant weaknesses found by COFC to be rationally assigned are numerous and pervasive enough for DOC to conclude that the Offeror's technical proposal is Unacceptable, and that the Offeror is therefore ineligible for award regardless of price or other factors. For these reasons, even if COFC were to hold that DOC made errors in its re-evaluation, and even if DOC removed the re-evaluated significant weaknesses and weaknesses from DOC's analysis, DOC would still make the same decision to not make an award to Ekagra Partners.

ECF No. 77 at AR 33077-78. In other words, the Agency concluded that the re-evaluation changed nothing and even if all the Agency had before it were the six significant weaknesses that the Court already held to have been rationally assigned, the outcome would be the same. Thus, the arguments about the re-evaluation are only relevant to the extent that the Agency's conclusion that the original significant weaknesses alone made Ekagra's technical proposal unacceptable is arbitrary and capricious. That is a significant hurdle because the question comes down to whether the significant weaknesses the Court has already upheld pose an unacceptable risk to the Government.

And the Court is concerned about the intended use of the consultants. Ekagra has included a declaration from Mr. Bragg as an attachment to its Complaint to support Count I. *See* ECF No. 46-1; *see also* ECF No. 46 ¶¶ 73-74. For the Court to consider that declaration,

however, Ekagra will need to establish that the Court may supplement the record with Mr. Bragg's declaration.  Absent supplementation of the administrative record, the Court will not consider such a declaration.  *E.g.*, *Innovative Test Asset Sols. LLC v. United States*, 125 Fed. Cl. 201, 222 n.22 (2016) (declining to consider declarations because the parties had not met the requirements for supplementing the administrative record).  But even if the Court were to consider the declaration, it appears to offer little more than one expert's[2] disagreement with the Government's evaluation.  Again, the mere disagreement with the Agency's evaluation, whether by a lawyer or an expert, is not a sufficient basis to upset a contract award.  *Tech Sys., Inc. v. United States*, 98 Fed. Cl. 228, 244 (2011) ("'[N]aked claims' of disagreement with evaluations, 'no matter how vigorous, fall far short of meeting the heavy burden of demonstrating that the findings in question were the product of an irrational process and hence were arbitrary and capricious'") (citing *Banknote Corp. of Am. v. United States*, 56 Fed. Cl. 377, 384 (2003)).

Further, it is not clear what the consultants would offer as to Count II, which addresses Ekagra's contention that the Agency changed the standard against which it measured Ekagra's proposal during the re-evaluation.  The Court is not convinced that Ekagra would need the assistance of an IT consultant to determine whether the Agency imposed a greater burden on Ekagra than the awardees, as Count II alleges.  *See* ECF No. 46 ¶¶ 78-98.  Thus, Count II does not appear to require any assistance from consultants.  The same is true of Count III, which raises challenges to the process by which the Agency conducted the re-evaluation.  *See* ECF No. 46 ¶¶ 99-105.  Again, there does not appear to be anything that an IT consultant could say that would shed light on these issues.

Third, the number of applications does not materially move the analyses.  Ekagra has filed applications for three lawyers to have access to protected information under the protective order.  ECF Nos. 55-57.  This is in line with the number of attorney applications that the parties filed in this case.  Of course, Ekagra has also filed applications for three consultants to gain access to the protected information.  ECF Nos. 58-60.  And Ekagra has explained the system it has implemented to prevent running afoul of the Protective Order's limitation that each party may have no more than three copies of protected information.

Ekagra contends that the admission of professional consultants with extensive records of admission to protective orders does not materially increase the risk of inadvertent disclosure.  The Government and BrightPoint, however, oppose because they find the risk to be too great, relying primarily on *Voith Hydro, Inc. v. United States*, 141 Fed. Cl. 723 (2019), and *Hitkansut LLC v. United States*, 111 Fed. Cl. 228 (2013).  *Voith Hydro* found the risk of inadvertent disclosure too great because the consultant's "activities, in the same region, and in the same hydroelectric industry, put a great deal of [Intervenor]'s future business interests at risk . . . . [Intervenor] notes, for example, the substantial overlap between [the consultant's] customer base and the current and potential customers of [Intervenor] and its business partners."  *Voith Hydro, Inc. v. United States*, 141 Fed. Cl. 723, 726 (2019) (internal citation omitted).  And in *Hitkansut*, the consultant "owns a consulting business that is built around her knowledge of the processes at

---

[2] To be clear, the Court has not qualified Mr. Bragg as an expert in this case; rather, the Court assumes for the sake of this motion that he would be qualified as an expert were the Court to consider his testimony.

issue in this patent litigation. . . .  Knowledge of Oak Ridge's confidential technical information could give [the consultant] and her customers a competitive advantage in the field." *Hitkansut LLC v. United States*, 111 Fed. Cl. 228, 239 (2013) (internal citation omitted).  Taking these cases together, the clear import is that the Court must consider both the proposed consultant and his or her customer base when deciding whether to grant access to the protective order.

The Government and BrightPoint complain that neither they nor the Court can properly analyze the risk of inadvertent disclosure because the consultants have not listed all their clients as the Court's protective order requires.  The consultants' applications omit certain information that limits the ability of the parties and the Court to assess the risk of inadvertent disclosure.[3] Specifically, the Government contends that its ability to assess the risk of Mr. Bragg's application is hindered by the fact that his application does not identify a "client name, case name, or docket number" for the work identified in paragraph 4 of his list of clients.  ECF No. 65 at 5.  The entry states:

> September, 2021; expert consultant services in the protest of 22nd Century Technologies, regarding award of management and collaboration systems support services by Office of Comptroller of the Currency to Procentrix, Inc., under RFQ #2031JWW21Q00070.

ECF No. 58-2.  The Court has confirmed that Mr. Bragg sought admission to the protective order in *22nd Century Technologies, Inc. v. United States*, Case No. 21-1597, which was a protest of RFQ No. 2031JWW21Q00070 in this Court before Judge Dietz.  Procentrix was a Defendant-Intervenor.  And the public docket in that case reveals that Mr. Bragg's client was 22nd Century Technologies, Inc.  In the end, Judge Dietz granted Mr. Bragg access to some, but not all, of the record in that case.  During argument, the Government acknowledged that the information the Court was able to confirm addressed the concerns about Mr. Bragg's involvement in the 22nd Century Technology matter.

The Government has a greater point regarding Mr. Schnell's application, which redacts significant amounts of information about his work.  Thus, the Government argues it is impossible for it to determine the risk of inadvertent disclosure because it does not know who Mr. Schnell's clients are and what he is working on.  The Court similarly cannot determine whether these clients or matters result in an increased risk of inadvertent disclosure.  Here, Ekagra admits certain information is not included and explains that certain information was omitted because Mr. Schnell has not yet been disclosed as an expert in several matters.  And Ekagra contends that Mr. Schnell should not be punished for complying with the privilege obligations in those engagements.  But the Court is not deciding whether to punish Mr. Schnell, it is deciding whether to put the parties' proprietary information at risk.  In other words, resolving this motion is not about punishment, it is about protection.  And without the information necessary to ensure

---

[3] Nobody is arguing or suggesting that any of the proposed consultants would intentionally disclose any of the information subject to this protective order.  They each have been admitted to a number of protective orders and there is no indication that any of them have ever violated one of them.

that admitting Mr. Schnell to the protective order will not increase the risk of disclosure, the Court cannot grant the applications.

In the end, the Court is left with a request for consultants to access the proprietary information of more than 60 offerors so that Ekagra's counsel can get technical assistance with the record in this case.  Yet, as explained above, Ekagra has not established that such access is necessary "to effectively represent its position."  RCFC App. C ¶ 18(c); *see also Voith Hydro*, 141 Fed. Cl. at 725 ("The court's analysis, therefore, must consider whether Mr. Reed's access to protected information is necessary so that Voith may 'effectively represent its position,' and whether Alstom's concerns about 'the risk of inadvertent disclosure' have merit.").  And the lack of need coupled with the uncertain (albeit likely not overwhelming) risk of inadvertent disclosure leads the Court to deny the applications for access to the protective order, ECF Nos. 58-60.

IT IS SO ORDERED.

<u>s/ Edward H. Meyers</u>
Edward H. Meyers
Judge